IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| EVANS GENERAL CONTRACTORS, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>FIRST MERCURY INSURANCE COMPANY,<br><br>            Defendant. | CASE NO.<br>3-22-cv-00228 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff Evans General Contractors, LLC ("Evans") files this Complaint for breach of contract, declaratory judgment, bad faith, and attorney's fees, and demand for jury trial against Defendant First Mercury Insurance Company ("First Mercury"), and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Evans General Contractors, LLC is a Georgia limited liability company with its principal place of business in Georgia at 3050 Northwinds Parkway, Suite 200, Alpharetta, Fulton County, Georgia 30009.

2.     Evans General Contractors, LLC consists of the following members:

| Member | Citizenship |
|---|---|
| Richard T. Evans, Jr. | Georgia |
| Sarah Rothwein | Georgia |
| Jeffrey F. Jepson, Family Trust | Georgia |
| Christian Hersacher | South Carolina |
| Chris Hilgeman | Georgia |
| John De Lay | Georgia |
| Jesse Bentley | Georgia |
| Jared Heald | Georgia |
| Sarah E. Rothwein, Irrevocable Trust | Georgia |
| Richard T. Evans, Jr., Irrevocable Trust | Georgia |
| AV Office 2, LLC[1] | Georgia |
| Christian Tanner Case | Georgia |
| Darryl Strunk | South Carolina |

3.     Evans is a citizen of Georgia and South Carolina.

4.     Upon information and belief, Defendant First Mercury is a Delaware corporation with its principal place of business in Missouri. First Mercury is a citizen of Delaware and Missouri.

5.     First Mercury issues policies to insureds in North Carolina and regularly transacts business in North Carolina.

---

[1] The members of AV Office 2, LLC are listed in the table.

6.      First Mercury may be served through the North Carolina Commissioner of Insurance and State Fire Marshal, North Carolina Department of Insurance, 325 N. Salisbury Street, Raleigh, North Carolina 27603. *See* Policy, at 22.

7.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because this action is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over all parties in this action because the parties regularly transact business in North Carolina.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

**I.      BACKGROUND**

10.      Evans provides design-build and general contracting services for construction projects throughout the United States.

11.      In December 2017, Evans contracted with Egger Woods Products, LLC ("Egger") to serve as the design-builder for part of a multi-building construction project in Linwood, North Carolina (the "Project").

12.      After Evans substantially completed its work, Egger refused to issue punchlist items to Evans, challenged whether Evans' work was substantially complete, and refused to pay Evans for its work.

13.    Evans filed an arbitration demand with the American Arbitration Association ("AAA") seeking payment from Egger (the "Egger Arbitration").

14.    Egger filed a counter-demand against Evans, seeking over $2,000,000 in damages for alleged design and construction defects at the Project (the "Counter-Demand").

15.    Egger's Counter-Demand did not contain any details regarding the alleged design and construction "defects."

16.    Evans moved for a More Definite Statement from Egger.

17.    Egger filed a More Definite Statement and Supplemental More Definite Statement more specifically listing the alleged "defects" for which Egger seeks damages.

18.    Based on Egger's Counter-Demand and subsequent filings, Evans joined several subcontractors with whom Evans contracted to perform work at the Project.

19.    In August 2021, Egger provided a supplemental summary of its alleged damages. Egger now seeks over $8,000,000 in damages from Evans.

20.    In September 2021, the parties agreed to transfer the Egger Arbitration from the AAA panel to a private Arbitration proceeding.

21.    The Egger Arbitration has never been dismissed or dropped, and it remains pending in the private Arbitration proceeding.

## II.     THE FIRST MERCURY POLICY

22.     First Mercury issued a Primary Owner Controlled Insurance Program ("OCIP") policy with commercial general liability coverage, Policy No. CA-CGL-0000078408-01 (the "Policy"), Policy Period May 16, 2018 through May 16, 2022, for the Project. [A true and correct copy of the Policy is attached hereto as **Exhibit A**.]

23.     The Policy contains a $2,000,000 per occurrence limit of liability for property damage at the Project.

24.     Per the Policy's Construction Project Endorsement- OCIP/CCIP (the "OCIP Endorsement"):

> The Declarations is amended to include the following as Named Insureds:
>
> Any contractor "enrolled in the owner controlled insurance program or contractor controlled insurance program (whichever is applicable), provided such contractor is "enrolled":
>
> 1. Prior to any "bodily injury," "property damage" or "personal and advertising injury" insured under this policy for which such contractor may be liable;
>
> 2. Prior to any claim or "suit" brought against such contractor and insured under this policy; and
>
> 3. During the policy period but before the Project(s) is "completed."

Policy, at 47.

25.     Per the Insuring Agreement, First Mercury "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage'" to which the insurance applies. *Id*. at 5.

26.     First Mercury also has a "right and duty to defend the insured against any 'suit' seeking those damages." *Id*.

27.     "Suit" includes "[a]n arbitration proceeding in which [damages because of property damage] are claimed and to which the insured must submit." *Id*. at 19.

28.     The OCIP Endorsement provides:

This insurance applies to . . . "property damage" only if:

1.     The . . . "property damage" is caused by an "occurrence";

2.     The . . . "property damage" occurs during the policy period, or during the Coverage Extension Periods as set forth under Paragraph E. of this endorsement;

. . .

4.     The . . . "property damage" arises out of construction operations performed at the project(s) shown and as described in the Project Schedule (hereinafter referred to as the Project), and pursuant to a contract involving an owner controlled insurance program or a contractor controlled insurance program, whichever is applicable.

*Id*. at 47.

29.    The Policy's Project Schedule lists the Project at issue in the Egger Arbitration as the covered Project. *Id*. at 50.

30.    Per the Policy, "property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." *Id*. at 19.

31.    An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 18.

32.    The Policy also contain certain exclusions, including the following:

This insurance does not apply to

. . .

**Damage to Property**

"Property damage" to:

. . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any real property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

. . .

**Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization

because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

*Id*. at 8-9 (collectively, the "Business Risk Exclusions").

33. The Policy defines "Products-completed operation hazard" to include:

[A]ll . . . "property damage" arising out of "your product" or "your work" except:

1. Products that are still in your physical possession; or

2. Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) Completion and acceptance of the entire Project(s) by all parties designated in its construction agreement;

(b) When all of the work to be done at a location shown in the Project Schedule has been completed if Project(s) calls for work at more than one location;

(c) When that part of the work done at the Project(s) has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same Project (s).

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

*Id*. at 49.

34. The Policy defines "Your product" to mean:

Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*Id.* at 19.

35. The Policy defines "Your work" to mean:

Work or operations performed by you or on your behalf; and

Materials, parts or equipment furnished in connection with such work or operations.

Includ[ing]:

Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

The providing of or failure to provide warnings or instructions.

*Id.* at 20.

36. The Policy provides the following definition of "Impaired property":

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

*Id*. at 17.

37.    The Policy also contains a Limited Exclusion-Contractors- Professional Liability Endorsement. Per the Professional Liability Exclusion:

This insurance does not apply to . . . "property damage". . . arising out of the rendering of or failure to render any professional services by you, but only with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

*Id*. at 35.

38.    The Policy also contains a Cross Liability Exclusion for Products- Completed Operations-With Designated Exception(s) Endorsement (the "Cross Liability Exclusion"). Per the Cross Liability Exclusion:

This insurance does not apply to any demand, allegation, claim or "suit" for . . . "property damage" included in the "products-completed operations hazard" that is made or brought by any person or organization qualifying as a Named Insured under this policy against any other person or organization qualifying as a Named under this policy.

However, this exclusion does not apply to:
Egger Wood Products, LLC
Evans General Contractors

*Id*. at 10.

## III.   FIRST MERCURY HAS A DUTY TO DEFEND AND INDEMNIFY EVANS IN THE EGGER ARBITRATION

39.     Egger is the Named Insured under the Policy.

40.     As part of the Project, Evans enrolled in the First Mercury OCIP coverage.

41.     Evans enrolled in the OCIP coverage prior to any alleged "property damage" giving rise to Egger's claims in the Egger Arbitration, prior to Egger alleging any claims against Evans, and during the Policy period before the Project was complete.

42.     Thus, per the OCIP Endorsement, Evans is also a Named Insured under the Policy.

43.     The Egger Arbitration is a "suit" as defined in the Policy.

44.     In the Egger Arbitration, Egger asserts claims against Evans for property damage arising out of construction operations performed at the Project pursuant to a contract between Egger and Evans, a contract that involved an OCIP program.

45.     The property damage alleged by Egger was caused by an occurrence or multiple occurrences at the Project.

46.     The alleged property damage occurred during the Policy period and/or the Coverage Extension Period listed in the Policy.

47.     Thus, Egger's claims in the Egger Arbitration are covered by the Policy's Insuring Agreement.

48.     Egger's claims in the Egger Arbitration do not fall within any exclusions in the Policy.

49.     Egger seeks damages for property damage that does not fall within any applicable Business Risk Exclusions.

50.     Egger seeks damages for property damage included in the products-completed operations hazard.

51.     The Cross Liability Exclusion does not apply to Egger or Evans.

52.     Thus, First Mercury has a duty to defend and indemnify Evans against the Egger's claims in the Arbitration.

## IV.     FIRST MERCURY HAS A DUTY TO DEFEND AND INDEMNIFY EVANS' SUBCONTRACTORS IN THE EGGER ARBITRATION

53.     The claims against Evans' subcontractors are based on Egger's claims against Evans.

54. Thus, these claims also allege damages for property damage covered by the Policy that do not fall within any exclusions in the Policy.

55. The subcontractors are also Named Insured per the OCIP Endorsement.

56. The Cross Liability Exclusion does not bar coverage for claims against the subcontractors because the Cross Liability Exclusion does not apply to claims brought by Egger or claims brought by Evans.

57. Thus, First Mercury has a duty to defend and indemnify Evans' subcontractors against the Egger Arbitration.

## V. FIRST MERCURY INEXCUSABLY BREACHES ITS ACKNOWLEDGED DUTY TO DEFEND EVANS

58. On September 15, 2021, Evans tendered the Egger Arbitration claims to First Mercury on behalf of itself and its subcontractors. [A true and correct copy of Evans' tender to First Mercury is attached hereto as **Exhibit B**.]

59. On September 24, 2021, First Mercury, through its authorized claims administrator United States Fire Insurance Company ("U.S. Fire"), acknowledged receipt of the claim and sought information about the Egger Arbitration.[2]

60. Prior to September 2021, Evans' Commercial General Liability carrier, The Cincinnati Insurance Company ("Cincinnati") appointed defense counsel to represent Evans in the Egger Arbitration.

---

[2] U.S. Fire was the authorized claims administrator for First Mercury for the OCIP Policy. Thus, this Complaint refers to U.S. Fire and First Mercury collectively as "First Mercury."

61.     Cincinnati's duty to defend and indemnify Evans is excess over First Mercury's duty to defend and indemnify Evans.

62.     On September 28, 2021, First Mercury requested a call with Evans' Cincinnati-appointed defense counsel.

63.     On that call, Evans' defense counsel explained to First Mercury that the parties to the Egger Arbitration agreed to transfer the Arbitration from the AAA proceeding to a private arbitration proceeding.

64.     Defense counsel made clear to First Mercury that the Egger Arbitration remained and would remain pending after the transfer to the private forum.

65.     Nevertheless, First Mercury failed to undertake its defense obligations to Evans and its subcontractors.

66.     First Mercury did not issue any coverage opinion or otherwise explain its failure to defend for four months.

67.     On January 14, 2022—four months after Evans tendered the Egger Arbitration to First Mercury—First Mercury issued a letter to Evans, attempting to explain its failure to defend. [A true and correct copy of the January 14, 2022 Letter is attached hereto as **<u>Exhibit C</u>**.]

68.      In the Letter, First Mercury indicated that it was failing to undertake its defense obligations because the "Arbitration was dismissed."

69.     Thus, despite defense counsel explaining to First Mercury that the Arbitration would remain pending in a private proceeding after the transfer to that forum, First Mercury unjustifiably concluded that there was no pending Arbitration or "suit" under the Policy.

70.     In the January 14, 2022 Letter, First Mercury still failed to address its duty to defend and indemnify Evans' subcontractors.

71.     Through January 14, 2022, First Mercury did not issue any coverage position regarding the subcontractors or reserve the right to deny coverage for the subcontractors under any provisions or exclusions.

72.     On February 1, 2022, Evans, through coverage counsel, responded to First Mercury's January 14, 2022 Letter. [A true and correct copy of Evans' February 1, 2022 Response Letter is attached hereto as **Exhibit D**.]

73.     In the February 1, 2022 Response Letter, Evans explained again, as defense counsel had four months earlier, that there was a pending, private Arbitration proceeding.

74.     Evans demanded that First Mercury immediately assume responsibility for the cost of Evans' defense in the Egger Arbitration and agree to indemnify Evans.

75.     Evans further demanded that First Mercury issue a coverage position regarding Evans' subcontractors, agreeing to fulfill its duties to defend and indemnify the subcontractors in the Egger Arbitration.

16

76.     On February 8, 2022, First Mercury sent two letters (collectively, the "Modification Letters") to Evans. [True and correct copies of the Modification Letters are attached hereto as **Exhibit E** and **Exhibit F**.]

77.     In the Modification Letters, First Mercury acknowledged its duty to defend Evans in the pending Egger Arbitration.

78.     First Mercury still failed to address its obligation to Evans' subcontractors in the Modification Letters.

79.     To date, First Mercury has failed to issue any formal coverage position regarding its obligations to the subcontractors in the Egger Arbitration.

80.     Following the Modification Letters, First Mercury acknowledged that its duty to defend Evans is primary to any other carriers' obligation to Evans.

81.     Nevertheless, First Mercury instructed Evans' defense counsel to continue sending bills to Cincinnati and to bill half of defense counsel's fees to Cincinnati and half to First Mercury.

82.     Cincinnati objected to this arrangement and seeks reimbursement of defense costs from First Mercury.

83.     First Mercury's conduct from September 2021—the date it received tender of the Egger Arbitration—to present has significantly delayed resolution of the Egger Arbitration.

84.     For example, the Egger Arbitration was originally scheduled for mediation on March 2, 2022.

85.     On February 28, 2022, a claims representative from another carrier canceled that mediation because First Mercury "[wa]sn't going to be ready to participate meaningfully" in the mediation.

86.     First Mercury's conduct from September 2021 to present has damaged and prejudiced Evans, as well as all other parties involved in the Egger Arbitration.

## COUNT I: BREACH OF CONTRACT

87.     Evans repeats and realleges the allegations set forth in paragraphs 1 through 87 of this Complaint as if fully restated herein.

88.     The Policy provides coverage for the Egger Arbitration.

89.     Evans tendered the Egger Arbitration to First Mercury and complied with all other conditions precedent for coverage.

90.     First Mercury has a contractual duty to defend and indemnify Evans against the Egger Arbitration.

91.     First Mercury has acknowledged its duty to defend Evans against the Egger Arbitration.

92.     First Mercury's duty to defend and indemnify Evans in the Egger Arbitration is primary to that of any other carrier.

93. First Mercury failed to undertake any duty to defend Evans in the Egger Arbitration from September 2021 through February 2022.

94. After acknowledging its primary duty to defend Evans, First Mercury still failed to undertake full responsibility for Evans' defense in the Egger Arbitration.

95. By failing to undertake Evans' defense from September 2021 through February 2022 and by failing to take full responsibility for Evans defense now, First Mercury breached its duty to defend Evans in the Egger Arbitration.

96. Evans suffered damages as a result of First Mercury's breach.

97. These damages include, but are not limited to, damages caused by the delay that First Mercury's conduct has caused in the Egger Arbitration.

## COUNT II: DECLARATORY JUDGMENT THAT FIRST MERCURY HAS A DUTY TO DEFEND AND INDEMNIFY EVANS

98. Evans repeats and realleges the allegations set forth in paragraphs 1 through 98 of this Complaint as if fully restated herein.

99. Evans seeks a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201.

100. An actual controversy of a judicial nature exists between Evans and First Mercury regarding First Mercury's obligation to defend and indemnify Evans in the Egger Arbitration.

101.    The Policy provides coverage for the Egger Arbitration.

102.    Evans tendered the Egger Arbitration to First Mercury and complied with all other conditions for coverage under the Policy.

103.    First Mercury contends that it is not required to indemnify Evans for the Egger Arbitration and refuses to comply with its defense obligations.

104.    Evans seeks a declaration that First Mercury is obligated to defend and indemnify Evans in the Egger Arbitration.

105.    Evans seeks a declaration that First Mercury's obligation to defend and indemnify Evans in the Egger Arbitration is primary to that of any other carrier.

## COUNT III: DECLARATORY JUDGMENT THAT FIRST MERCURY HAS ACTED IN BAD FAITH

106.    Evans repeats and realleges the allegations set forth in paragraphs 1 through 106 of this Complaint as if fully restated herein.

107.    Evans seeks a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201.

108.    An actual controversy of a judicial nature exists between Evans and First Mercury regarding whether First Mercury has acted in bad faith with regards to the Egger Arbitration.

109. For over four months, First Mercury failed to defend Evans in the Egger Arbitration based on its unjustifiable conclusion that there was no pending arbitration.

110. For over four months, First Mercury failed to provide a coverage position regarding the Egger Arbitration.

111. To date, First Mercury fails to provide a formal coverage position regarding its duty to defend and indemnify Evans' subcontractors in the Egger Arbitration.

112. Despite belatedly acknowledging its duty to defend Evans, to date, First Mercury has failed to fully comply with its duty to defend Evans.

113. First Mercury's dilatory conduct regarding its obligations in the Egger Arbitration has prejudiced Evans and all other parties to the Egger Arbitration.

114. Evans seeks a declaration that First Mercury is liable to Evans in excess of the Policy limits to the extent that First Mercury's wrongful refusal to defend Evans results in an excess judgment against Evans.

## **DEMAND FOR JURY TRIAL**

Evans hereby demands a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Evans prays for relief as follows:

a.  Evans requests that this Court enter judgment in favor of Evans and against First Mercury on all of Evans' claims;

b.  Evans requests that this Court hold that First Mercury has breached its contractual obligations to Evans by failing to defend Evans against the Egger Arbitration and award Evans damages for First Mercury's breach;

c.  Evans requests that this Court issue a declaration that First Mercury is obligated to defend and indemnify Evans against the Egger Arbitration;

d.  Evans requests that the Court issue a declaration that First Mercury has acted in bad faith with regards to its obligations in the Egger Arbitration; and

e.  Evans requests such other and further relief as this Court deems just and proper.

Respectfully submitted this 20th day of May, 2022

_____
John M. Moye
NC Bar No. 35463
BARNES & THORNBURG LLP
3475 Piedmont Road N.E., Suite 1700
Atlanta, Georgia 30305
Tel. (404) 264-4006
Fax (404) 264-4033
Email JMoye@btlaw.com

BARNES & THORNBURG LLP
4280 Six Forks Road, Suite 1010
Raleigh, NC 27609-5738
Tel. (919) 536-6200
Fax (929) 536-6201

D. Austin Bersinger
Georgia Bar No. 144792
BARNES & THORNBURG LLP
3475 Piedmont Road N.E., Suite 1700
Atlanta, Georgia 30305
Tel. (404) 264-4082
Fax (404) 264-4033
Email: austin.bersinger@btlaw.com

*Attorney for Plaintiff Evans General Contractors*